UNITED STATES DISTRICT CURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JAMIE EDELKIND,

                Plaintiff,       :       REPORT & RECOMMENDATION

                                 :

            -against-         :       09 Civ. 5835 (SHS)(MHD)

                                   :

JANICE KILLIAN, WARDEN, FCI
OTISVILLE; JOHN YOST, WARDEN FCI     :
LORETTO; CAROLYN SABOL, WARDEN, FMC
DEVENS; HEATHER SPOSATO, CASE         :
MANAGER, FCI LORETTO; AL WELCH,
UNIT MANAGER, FCI OTISVILLE;         :
MARYANN PALKO, CHAPLAIN, FCI
OTISVILLE; RABBI LASKIN, CHAPLAIN,  :
FCI OTISVILLE; SCOTT DODRILL, NE
REGIONAL DIRECTOR, BOP; KENNETH HITE,:
COUNSELOR, FCI LORETTO; and ERIC
HOLDER, U.S. ATTORNEY GENERAL,     :

             Defendants.     :
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/11

TO THE HONORABLE SIDNEY H. STEIN, U.S.D.J.:

     Pro se plaintiff Jamie Edelkind was an inmate in United States

Bureau of Prisons correctional system until he was released from

federal custody on August 4, 2011. He commenced this lawsuit in

2009, while still incarcerated, by filing a pleading that he

denominated as a petition for a writ of habeas corpus. Upon its

receipt, we interpreted that document as, in substance, a civil

complaint, since he was complaining about conditions of confinement

in three federal correctional facilities in which he had been

housed since 2005. (Order, July 17, 2009). Plaintiff named ten

individual defendants, nine of whom are present or past employees of the Bureau of Prisons and the last of whom is Eric Holder, the United States Attorney General. Plaintiff makes a plethora of complaints about his treatment at the various facilities, which include the Loretto Federal Correctional Institute in Pennsylvania, the Devens Federal Medical Center in Massachusetts, and the Otisville Federal Correctional Institute in New York State. He seeks both monetary and injunctive relief for the wrongs allegedly done to him.

In addition to deeming the habeas petition to be a civil complaint, we directed that plaintiff apply for in forma pauperis relief and arrange with the United States Marshal's Office for service of process. Plaintiff received in forma pauperis status in September 2009, and the Marshal eventually served eight of the ten individual defendants named in the complaint.

Plaintiff subsequently communicated with the court by a letter, in which he sought in conclusory terms an order granting him summary judgment and also offered what he described as an amendment to his complaint, in which he asserted two new claims. (Letter to the Court from Jamie Edelkind, Jan. 25, 2010; Amend. to Compl., Aug. 6, 2009). Defendants in turn opposed his summary-

2

judgment application. They have also moved to dismiss the complaint in its entirely on a variety of grounds and asked as well, in the alternative, for summary judgment. Plaintiff has opposed the defendants' motion.

For the reasons that follow, we recommend that the complaint be dismissed.

A. The Nature of Plaintiff's Claims

Plaintiff's initial pleading and his supplementation of it are not models of clarity. Nonetheless, given his status as an untutored pro se litigant, we read his papers liberally and with an eye to recognizing in them the strongest arguments that may be discerned. See, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (citing cases).

For clarity, we summarize our understanding of each of plaintiff's claims, organized into categories corresponding to the three correctional facilities that housed plaintiff and that are mentioned in his pleadings, with separate treatment of one claim that appears to challenge a Bureau of Prisons ("BOP") policy. The first facility is Devens, where plaintiff was housed from August

3

17, 2005 until November 2, 2005, and then again from March 14, 2007 until November 1, 2007. Plaintiff then arrived at Loretto on November 8, 2007 and stayed there until October 16, 2008. The BOP then sent him to Otisville, where he arrived on November 5, 2008. He stayed there until January 6, 2010, some time after the filing of his current lawsuit. In January 2010, he was reassigned to Allenwood. (See Davidson Decl. ¶ 3).


### 1. The Devens Claims


Plaintiff appears to assert two claims pertinent to his stays at Devens. The first ("the first Devens claim") concerns a disciplinary proceeding resulting from what Edelkind alleges was a charge that he had impermissibly engaged in a three-way telephone call. He alleges that during the hearing he was denied the opportunity to call a witness and to offer a tape of the phone call. He goes on to say that he received a "6 month telephone sanction and two weeks of SHU Time." (Compl. Ground One ¶ 3, Mar. 30, 2009). We infer that plaintiff is seeking to assert a procedural due-process claim, although he does not identify Warden Carolyn Sabol -- the only named Devens defendant -- as having had any involvement in the challenged decisions of the hearing officer.

4

The plaintiff's second Devens-related claim ("the second Devens claim") concerns an apparently different disciplinary charge, "for using [a] telephone while on telephone restriction." (Id. Ground One ¶ 4). He alleges that a BOP employee told him that the warden had instructed the hearing officer to find him guilty, that even before the hearing it had been decided to subject him to a disciplinary transfer, that his typewritten defense was not considered at the hearing, and that he was sentenced to disciplinary segregation for 90 days, a one-year loss of telephone privileges, a disciplinary transfer, and a loss of 27 days of good time. He goes on to state, however, that his appeal from this hearing was partly upheld. As a result, he says, upon transfer to Loretto he received a new hearing, and this hearing ended with the removal of all sanctions except for six months loss of telephone privileges, which sanction had already expired.

Plaintiff then goes on to allege that he appealed from the reduced sanction, and that this appeal was rejected because a specific report from the hearing officer was missing from his file. (Id.). Nonetheless, in plaintiff's amendment to his complaint he reports that Otisville staff located a copy of the missing report and that at that facility he had his telephone privileges restored.

5

(Amend. to Compl. ¶¶ 3-4).

## 2. The Loretto Claims

Plaintiff asserts eight distinct claims pertaining to his stay at Loretto, most of them of a very general nature. The first concerns the grievance procedures at the prison ("the first Loretto claim"). Edelkind alleges that defendant Kenneth Hite, a counselor at the prison, would "routinely" refuse to provide inmates the form required to submit an Informal Resolution Request, which was the required first step in the inmate grievance procedure. He further alleges that Hite and defendant Heather Sposato, a case manager at Loretto, would refuse to pick up Informal Resolution Request forms when he was in the segregated housing unit ("SHU"). (Compl. Ground One ¶ 1).

Plaintiff's second claim is that on one occasion he was given an unjustified incident report because he had submitted an administrative-remedy request complaining about the prison chapel and that he was sanctioned by the Unit Disciplinary Committee, which consisted of Hite and Sposato ("the Second Loretto claim"). He goes on to admit, however, that he appealed, that his appeal was "granted" and that the Incident Report and the record of it "were

6

expunged." (Compl. Ground One ¶ 2).

Edelkind's third claim ("the third Loretto claim") is that he received two incident reports and was "severe[ly]" punished for conversations that he was having with his attorney on phone calls that were supposed not to be monitored. He states that he appealed but that the appeal was rejected as untimely. (Compl. Ground Two ¶ 1). He does not allege that any of the individual defendants were involved in these proceedings.

The fourth claim ("the fourth Loretto claim") is that while plaintiff was in SHU he was denied access to his legal materials and had only limited access to the prison law library, estimated at about 35 minutes every two weeks. (Compl. Ground Two ¶ 2). He does not allege that any of the current defendants were responsible for these restrictions.

Plaintiff's fifth claim ("the fifth Loretto claim") is that on one occasion a letter that he had written to his attorney was opened and read, and that as a result he was sanctioned. (Compl. Ground Two ¶ 3). He again does not allege that any of the named defendants was responsible for these actions.

7

Edelkind's next claim ("the sixth Loretto claim")is based on the contention that all correspondence "from the Courts and the judge are opened and read", and that his correspondence was copied and given to BOP investigators even if it was of a legal nature. (Compl. Ground 2 ¶ 4). Again, he does not assert that any of the named defendants was responsible for this practice.

The seventh claim ("the seventh Loretto claim") is that on one occasion while he was in SHU, he received "a sanction from the Unit Disciplinary Committee for a hearing that [he] was denied notice of and the ability to attend." Plaintiff reports that he complained to defendant John Yost, the Loretto Warden, as well as to "Staff", and that they agreed with him. Nonetheless, he says, the incident report was not expunged and he did not receive some form of credit for the sanctions already served. (Compl. Ground Two ¶ 5).

The last Loretto-related claim ("the eighth Loretto claim") is that Warden Yost "refused to reinstate my camp status or adjust my management variable" after plaintiff's disciplinary transfer was expunged. (Compl. Ground Three ¶ 1).

8

### 3. The Otisville Claims

Plaintiff asserts what appear to be four claims pertaining specifically to the time he spent at Otisville. The first ("the first Otisville claim") is that defendant Rabbi Laskin, a prison chaplain, did not permit him to call his ill wife at a time when he was "without telephone privileges." (Compl. Ground Three ¶ 2).

The next claim ("the second Otisville claim") is a pastiche of complaints about his treatment, including his disciplinary record. Thus he asserts that "most of my tickets were manufactured in order to falsely create a means to have me transferred." He alleges that he was subjected to what he refers to as "poisoned pen treatment", that he was "shaken down" up to six times a day for no reason and that he was "denied work" because "staff" advised that "they" -- who are unidentified -- "should not hire me since I was a 'monster.'" He asserts that all of this treatment was undeserved. (Compl. Ground Three ¶ 3). Nonetheless, he again fails to identify any individual defendant as responsible for this treatment.

Plaintiff's third claim ("the third Otisville claim") appears to concern his status at Otisville. He asserts that "the Unit Team" has failed to "properly address my security and classification." He

9

appears to be saying that although he has "Camp points," he is improperly being held at a "[m]edium security" facility. (Compl. Ground Three ¶ 4).

Edelkind's last claim that specifically targets Otisville ("the fourth Otisville claim") is found in his supplemental pleading. He complains, in cryptic terms, that Rabbi Laskin has refused to provide him necessary religious articles "for personal Kiddush" because the rabbi insists that "such be done in concert with non-Jews." (Amend. to Compl. ¶ 5).

### 4. The Conjugal-Visit Claim

In plaintiff's amendment to his complaint he also adds a claim that appears to challenge a BOP general prohibition on conjugal visits ("the conjugal-visit claim"). According to plaintiff, he is a married Jew, and the denial of such visits by his wife violates his right to practice his religion. (Amend. to Compl. ¶ 2).

### B. Plaintiff's Request for Summary Judgement

By letter to the court plaintiff has asked for entry of summary judgment in his favor. (Jan. 25, 2010 Edelkind Letter). In

10

doing so he offers no specified basis for such relief and proffers no evidence in support of his application.

## C. Defendants' Motion

Defendants have moved for either dismissal or summary judgment on a variety of grounds. First, they seek dismissal of all claims asserted against the Devens and Loretto defendants in their individual capacity for lack of personal jurisdiction. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Support of Defs.' Cross-Mot. for Summ. J., 14-18, Mar. 5, 2010). In addition, they claim that there is no jurisdiction over the Otisville defendants because plaintiff failed to properly serve them. (Id. at 17-18). Third, they assert that the Devens and Loretto claims are subject to dismissal for improper venue. (Id. at 18-20).

Defendants' fourth ground for relief comprises a set of defenses that they lump in the category of failure to state a claim, although they rely in part on an evidentiary record that they proffer in support of their motion. We summarize these arguments in the order in which they are made.

Initially, they assert that plaintiff failed to exhaust his

11

prison administrative remedies for all but one of his claims. (Defs.' Mem. of Law, 22-26). In this regard they note that the one exception is his first claim regarding his treatment at Devens. (Id. at 23).

Defendants next argue that for most of plaintiff's claims he fails to plead the personal involvement of any of the individual defendants. This omission, they say, is fatal to those claims. (Id. at 26-29). The defendants' following argument is that plaintiff fails to plead cognizable claims for denial of due process, denial of access to the courts and First Amendment retaliation. (Id. at 29-36).

Defendants' fifth challenge to the complaint focuses on plaintiff's request for injunctive relief, and is based on their contention that the relief that he seeks is unavailable under the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1)(A). (Id. at 36-37). Their final ground for dismissal concerns the claims against the defendants, if deemed to be asserted against them in their official capacities. If they are so construed, defendants argue, the claims are barred by sovereign immunity. (Id. at 37-38).

12

Finally, defendants argue that plaintiff's request for summary judgment should be denied because he proffers no evidence in support of any of his claims. (<u>Id.</u> at 38-39).

<u>ANALYSIS</u>

We address the defendants' motion first. Our analysis focuses on those issues that allow the court to dispose of the case in its entirety.

I. <u>Defendants' Motion</u>

A. <u>Personal Jurisdiction: The Claims Against the Devens and Loretto Defendants</u>

The principal thrust of defendants' jurisdictional argument is that, insofar as Edelkind sues the defendants in their individual capacities, this court lacks jurisdiction over the Devens and Loretto defendants. These defendants include Carolyn Sabol, the retired warden of Devens; John Yost, the retired warden of Loretto; Heather Sposato, a case manager at Loretto; Maryann Palko, retired chaplain at Loretto; and Kenneth Hite, a counselor at Loretto. Defendants' argument on this point, premised on the declarations of

13

those defendants as well as the allegations of the complaint, is plainly correct.

The party asserting a claim bears the burden to establish that the court has jurisdiction over the defendant. See, e.g. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)); Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999) (quoting Metro. Life Ins. Co., 84 F.3d at 566). In the face of a motion to dismiss on jurisdictional grounds, the court has discretion either to rely on facts in the pleadings and proffered affidavits or to conduct an evidentiary hearing to determine the relevant jurisdictional facts. See, e.g., CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986); United States v. Machat, 2009 WL 3029303, *5 (S.D.N.Y., Sept. 21, 2009). If the court chooses to rely on the pleadings and affidavits in lieu of a hearing, plaintiff need make only a prima facie showing of jurisdiction. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005); CutCo Indus., Inc., 806 F.2d at 364; see also, e.g., Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) (quoting Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)); Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (before discovery, plaintiff need only

14

make prima facie showing of personal jurisdiction, which may be established by good-faith allegations in the pleadings). In assessing such a motion, the court must "construe the pleadings and affidavits in plaintiff's favor at this early state." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997) (citing CutCo Indus., Inc., 806 F.2d at 365); see also DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (internal citation omitted); A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). Nonetheless, "conclusory non-fact-specific jurisdictional allegations" or a "legal conclusion couched as a factual allegation" will not establish a prima facie showing of jurisdiction. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998).

In the face of defendants' motion, plaintiff does not attempt to demonstrate a basis for personal jurisdiction over these defendants. Nonetheless, in view of his pro se status, we pursue the necessary analysis to conclude that jurisdiction is lacking.

The pertinent source of personal jurisdiction over the out-of-state defendants is ordinarily found in the law of the forum state.

15

See, e.g., Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006).[1]
In this case, there is no dispute that the Devens and Loretto
defendants all reside and were served outside New York, and hence
the pertinent provisions governing the scope and limits of personal
jurisdiction over these individuals is found in the New York long-
arm statute.

Section 302(a) of the New York CPLR provides that jurisdiction
may be asserted over a non-domiciliary who

> 1. transacts any business within the state or contracts
> anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to
> a cause of action for defamation of character arising from
> the act; or
>
> 3. commits a tortious act without the state causing injury
> to person or property within the state, except as to a
> cause of action for defamation of character arising from
> the act, if he

---

[1] Congress is of course free to legislate alternative
provisions for personal jurisdiction that may be asserted by the
federal courts in federal-question cases. See, e.g., PDK Labs,
103 F.3d at 1108 (noting that the forum state's personal-
jurisdiction rules apply unless the federal statute at issue
provides for national service of process); Local 8A-28A Welfare
and 401(K) Retirement Funds v. Golden Eagles Architectural Metal
Cleaning and Finishing, 277 F. Supp.2d 291, 294-94 (S.D.N.Y.
2003); I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.,
986 F. Supp. 816, 822 (S.D.N.Y. 1997) (because ERISA provides for
nationwide service of process, "a defendant is subject to
personal jurisdiction without regard to state long-arm
statutes").

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

In support of defendants' motion, each of the Devens and Loretto defendants has proffered a declaration stating that the declarant worked at one of these two facilities -- one in Pennsylvania and the other in Massachusetts -- and that the declarant "do[es] not reside, work or own real property in the State of New York" and "did not reside, work or own real property in the State of New York during all times relevant to the Plaintiff's complaint." (Decls. of Defs. Palko, Hite, Sposato, Sabol & Yost at ¶ 2). These declarations are unrebutted, and demonstrate that plaintiff cannot satisfy any of the requirements for assertion of long-arm jurisdiction under the CPLR. Since plaintiff has not even attempted to meet these requirements or respond in any way to defendants' showing, his claims against these

defendants in their individual capacities must be dismissed.[2]

B. Service on Defendants Welch and Laskin

Defendants next seek dismissal of the claims that plaintiff asserts against two of the Otisville defendants, Al Welch, a unit manager, and Rabbi Laskin, a retired chaplain. The premise for this aspect of the dismissal motion is defendants' contention that plaintiff failed to serve either of these defendants, an assertion supported by declarations from each of them. Thus each states:

> I was not served with a copy of Plaintiff's complaint (neither the initial Petition for Writ of Habeas Corpus," dated March 30, 2009, nor the "Amendment to Complaint", dated August 6, 2009) in this action by mail, in person, or otherwise, at either my work place or my personal residence. I have not received any request from Plaintiff to waive service of process pursuant to Federal Rule of Civil Procedure 4(d). I have not waived service of process of the complaint in this action.

(Laskin & Welch Decls. ¶¶ 2-4).

In response, plaintiff contends that both of these defendants

---

[2] In view of this conclusion, we need not address defendants' argument that venue with respect to the claims asserted against the Devens and Loretto defendants in their individual capacities is improper. (See Defs.' Mem. of Law at 18-20).

18

were served in person at the Otisville facility by a fellow inmate named Tito Vasquez. (Pl.'s Opp'n to Defs.' Mot. for Summ. J., 9, 10, May 7, 2010). In doing so, he does not proffer any testimony by Mr. Vasquez. Rather, he asserts that he witnessed Vasquez serving defendant Welch, and that Welch then discussed the pleading with him while holding the document. As for defendant Laskin, Edelkind claims to have witnessed Laskin holding a copy of the complaint while discussing it with plaintiff and another prison official. (Id.).

Although plaintiff does not make these statements under penalty of perjury, we deem his pro se submission to be the functional equivalent for present purposes. So viewed, his proffer amounts to a contradiction of defendants' factual contentions regarding service of process, and is thus sufficient for plaintiff to meet his prima facie burden on the current motion, subject to ultimate proof if and when deemed necessary.

Accordingly, we decline to recommend dismissal as to defendants Welch and Laskin based on failure to serve them.

19

C. The Exhaustion Defense

Defendants next seek dismissal or summary judgment based on plaintiff's asserted failure to exhaust prison remedies with respect to all but one of his claims. The one stated exception is the first Devens claim, which involved the alleged refusal of an unidentified hearing officer to allow plaintiff to call a witness and offer into evidence a tape of an allegedly illicit telephone call that he was charged with making.

We start by a brief review of the exhaustion requirements mandated by the PLRA. That Act requires, as a predicate to suit by an inmate concerning conditions of confinement, that he first exhaust available prison administrative procedures. 42 U.S.C. § 1997e(a). See, e.g., Woodford v. Ngo, 548 U.S. 81, 93 (2006). The route to exhaustion is presumptively that laid out by the pertinent prison system in its applicable regulations. See, e.g., Jones v. Bock, 549 U.S. 199, 219 (2007). Of particular note, "an untimely or procedurally defective" use of the grievance procedure does not satisfy the exhaustion requirement. Woodford, 548 U.S. at 83-84. The defense of failure to exhaust is treated as an affirmative defense, and hence the defendants must prove its factual basis. Jones, 549 U.S. at 216-17.

20

Although the Supreme Court has stressed the importance of compliance with prison grievance procedures, in 2004 the Second Circuit issued a quintet of decisions addressing the PLRA exhaustion requirement and describing when it may be appropriate to excuse a plaintiff's failure to undertake each of the steps mandated by a prison system for administratively airing a grievance. The net effect of the holdings in those five cases was to lay out a set of general principles that required the district courts to assess, on a case-specific basis, whether circumstances encountered by the inmate justified either (1) deeming the procedures in question to have been unavailable to him, or (2) determining that defendants have waived, or should be estopped from raising, the exhaustion defense, or (3) excusing the plaintiff from full compliance with the prison's procedural requirements. See Ortiz v. McBride, 380 F.3d 649 (2d Cir. 2004); Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004); Giano v. Goord, 380 F.3d 670 (2d Cir. 2004); Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004); Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004). As more recently summarized by the Court of Appeals:

> This court has recognized that "while the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply." These caveats fall into three categories: when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense

of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (internal citations omitted); see also Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007); Braham v. Clancy, 425 F.3d 177, 181-82 (2d Cir. 2005) (discussing the five exhaustion cases and Hemphill's three-part framework).[3]

In this case the relevant exhaustion requirements are found in the regulations of the BOP. They provide a four-level system, known as the Administrative Remedy Program, which enables inmates to obtain "formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10; (Davidson Decl. ¶ 4). The four stages of review involve, respectively, an informal resolution process (referred to as BP-8), and then appeals to the Warden, the Regional Director and the General Counsel of the BOP (respectively

---

[3] In view of the Supreme Court's decision in Woodford, there is some question whether all three parts of this analytical framework should survive, but the Second Circuit has thus far declined to hold that it has been affected. See, e.g., Macias, 495 F.3d at 43 n.1. See also Amador v. Andrews, No. 08-2079-pr, __ F.3d __, slip op. at 7750-51 (2d Cir. Aug. 19, 2011).

BP-9, -10 and -11).[4] (Davidson Decl. ¶ 4). <u>See</u>, <u>e.g.</u>, <u>Gonzalez v.</u>
<u>Hasty</u>, No. 07-1787-pr, 2011 WL 2463562, *4 (2d Cir. June 22, 2011).


    To pursue this process, the inmate is first required to
present the issue informally to the prison staff, who must attempt
to resolve it. 28 C.F.R. § 542.13(a). If the prisoner is
dissatisfied with the results of this effort, he may file a formal
written Administrative Remedy Request with the Warden of his
facility. This is to be done on a specified form and submitted
within twenty days after the event that led to the complaint. 28
C.F.R. § 542.14(a). The Warden must respond to the application
within twenty days, although he may receive one extension of twenty
days to do so. 28 C.F.R. § 542.18. If the inmate's application to
the Warden is denied, he may file an appeal with the applicable
Regional Director of the BOP within twenty days. 28 C.F.R. §
542.15(a). The Regional Director must issue a decision within
thirty days, although he may obtain one thirty-day extension. 28
C.F.R. § 542.18. If the inmate receives an adverse decision from
the Regional Director, he may file an appeal within thirty days

──────────────

    [4] A variation of this procedure is available for inmates to
appeal the outcome of a disciplinary hearing. After receiving a
decision, an inmate may appeal directly to the Regional Office
and continue through the remaining steps for grievance
processing. 28 C.F.R. § 542.14(d)(2).

with the Office of the BOP General Counsel. 28 C.F.R. § 542.15(a).
The General Counsel then has forty days to make a decision but may
obtain one forty-day extension. 28 C.F.R. § 542.18.

At each stage of this process, if the inmate does not receive
a timely response, he may deem that delay to be tantamount to a
denial and proceed to the next stage. 28 C.F.R. § 542.18. Once he
has received a decision from the General Counsel, he will be deemed
to have exhausted the BOP remedies. See 28 C.F.R. § 542.15.

In support of defendants' exhaustion argument, they proffer
the declaration of Marisa Davidson, Esq., Assistant Regional
Counsel for the BOP. She reports that she initially reviewed the
BOP's so-called SENTRY database, which includes data on each
federal inmate's administrative-remedy-program history and his
disciplinary history. The SENTRY database can provide a printout
for the inmate's entire filings in the administrative-remedy
program except that it does not include data regarding his initial,
informal resolution requests. (Davidson Decl. ¶¶ 2, 4-5). Having
acquired the history of plaintiff's administrative-remedy requests,
Ms. Davidson then reviewed the hard-copy documents created in the
process of addressing Edelkind's many complaints, a review that
included the files of the Office of the General Counsel and the

24

files maintained at the Devens, Loretto and Otisville facilities.
(<u>Id.</u> ¶ 6).

    Based on Ms. Davidson's review of all of this data, she
determined that plaintiff had failed to fully and properly exhaust
all but the first Devens claim. According to Ms. Davidson,
plaintiff initiated the formal phase of the administrative remedy
program for some but not all of his current claims. Such initiation
encompassed both of his Devens claims; the second, third, fifth,
seventh and eighth Loretto claims; the third and fourth Otisville
claims; and the conjugal-visit claim. (<u>Id.</u> ¶ 7). Thus he failed
even to initiate the first formal administrative steps regarding
his first and sixth Loretto claims and his first and second
Otisville claims.

    As for the claims concerning which he began to pursue his
administrative remedies, defendants note that his efforts as to all
but the first Devens claim were insufficient in number of respects.
We summarize these findings as follows:

    <u>Second Devens claim (disciplinary appeal for phone use while
on restriction)</u>: Edelkind filed a BP-10 on June 12, 2009. On July
19, 2009, the Regional Director denied the appeal. On September 9,

25

2009, plaintiff filed an untimely appeal to the General Counsel. The General Counsel denied the appeal as untimely on October 29, 2009 and notified plaintiff that to reassert the appeal he must provide BOP staff verification on BOP letterhead that his delay in appealing was not his fault.  Plaintiff never refiled his appeal. (<u>Id.</u> ¶ 8(b)).

Second Loretto claim (disciplinary appeal for providing false statement): On January 1, 2008 plaintiff filed a B-9 application with the Warden challenging a Unit Discipline Committee finding that he had made a false statement in a remedy request. The Warden denied his application on January 22, 2008. Plaintiff filed an appeal with the Regional Director on February 4, 2008, and on March 4, 2008 the Director granted the appeal and expunged the challenged disciplinary decision from plaintiff's record. Not surprisingly, then, plaintiff never appealed this decision to the General Counsel. (<u>Id.</u> ¶ 8(c)).

Third Loretto claim (disciplinary appeal for disruptive behavior): On September 15, 2008 plaintiff appealed to the Regional Director (B-10) from a disciplinary decision that sanctioned him for use of a phone to send messages to outside parties through his attorney. On October 15, 2008 the Regional Director denied the

26

appeal. On December 16, 2008 plaintiff filed an untimely appeal to the General Counsel, who rejected it on December 27, 2008 because of its untimeliness. Again, the General Counsel gave plaintiff the option to document that the delay was not his fault by submission of a staff statement on BOP letterhead. Although plaintiff eventually re-filed the appeal, he did not do so until July 15, 2009, after he had filed the current lawsuit. On October 29, 2009 the General Counsel denied the appeal. (Id. ¶¶ 8(d)).

Fourth Loretto claim (staff denial of access to legal materials): On August 25, 2008 plaintiff filed a complaint (BP-9) with the Warden complaining that the Loretto staff were denying him access to legal materials, limiting the amount of such materials that he could amass and otherwise preventing him from acquiring new materials quickly enough to meet court deadlines. On September 9, 2008, the Warden denied this application. On September 15, 2008 plaintiff appealed (BP-10) to the Regional Director. The Regional Director denied the appeal on October 15, 2008. Edelkind eventually filed an untimely appeal to the General Counsel on December 16, 2008. The General Counsel rejected the appeal on December 27, 2008 because it was untimely. Again the General Counsel gave plaintiff the opportunity to document the fact that the delay was not his fault by submitting a staff explanation on BOP letterhead.

27

Plaintiff never took advantage of this option. (Id. ¶ 8(f)).

Fifth Loretto claim (appeal of discipline for improper use of mail): On October 1, 2008 plaintiff filed an appeal to the Regional Office from a disciplinary finding that he had improperly used his privilege of correspondence with his attorney to send a message to another party. On November 10, 2008 the Regional Director rejected the appeal as untimely. He gave plaintiff the opportunity to document the fact that the delay was not his fault, documentation that must be obtained from the prison staff and submitted on BOP letterhead. Rather than doing so, on December 16, 2008 plaintiff appealed this decision to the General Counsel. On December 27, 2008, the General Counsel notified plaintiff that he concurred with the Regional Director and instructed plaintiff to provide the necessary documentation to the Regional Director, as originally required. Plaintiff did not do so and instead waited until July 15, 2009, when he again appealed to the General Counsel. On August 26, 2009, the General Counsel again rejected the appeal, and once more told plaintiff to comply with the documentation procedure originally specified by the Regional Director. On September 28, 2009 the plaintiff again appealed to the General Counsel rather than pursue the process to which he had been directed. The General Counsel rejected this latest appeal effort on November 17, 2009 and

reiterated the necessity for plaintiff to obtain BOP documentation that his original failure to meet the required time limits was not his fault. Plaintiff never pursued this remedy. (Id. ¶ 8(g)).


Seventh Loretto claim (disciplinary hearing held in absentia): On September 19, 2008 plaintiff appealed from disciplinary findings that he had attempted to receive money from another inmate and that he had been in improper possession of property. On October 8, 2008, the Warden denied plaintiff's appeal based on the finding that he had absented himself from the hearing. On November 3, 2008, plaintiff appealed this decision to the Regional Director. On December 3, 2008, the Regional Director denied the appeal for the same reason as offered by the Warden. On January 15, 2009, plaintiff filed an untimely appeal to the General Counsel. On January 29, 2009, the General Counsel rejected the appeal as untimely. Once more plaintiff was instructed that in order to pursue an appeal he would have to provide staff documentation on BOP letterhead that the delay in filing his appeal was not his fault. Plaintiff once more failed to do so and instead waited until July 15, 2009, when he filed another appeal to the General Counsel. The General Counsel rejected the appeal on August 21, 2009, advising plaintiff that he must provide the documentation previously required of him. On September 28, 2009 plaintiff again

29

appealed to the General Counsel. On November 17, 2009 the General Counsel again rejected the appeal and cited the need for documentation of the reason for plaintiff's original delay. In this instance plaintiff has also failed to comply with the General Counsel's instructions. (Id. ¶ 8(h)-(i)).

Eighth Loretto claim (application to correct disciplinary history errors): On October 7, 2008 plaintiff filed a complaint (BP-9) seeking correction of alleged errors in the records of his disciplinary history. On October 15, 2008 the Warden denied his application. On December 15, 2008 plaintiff filed what appears to be an untimely appeal to the Regional Director. The Regional Director denied the appeal on January 13, 2009. Plaintiff did not further pursue this application by appealing to the General Counsel. (Id. ¶ 8(j)).

Third Otisville claim (security designation and classification): On July 31, 2009, after the filing of this lawsuit, plaintiff filed a BP-9 with the Warden at Otisville, asserting that his classification level was incorrect and that he should be reassigned to a minimum security camp. On August 9, 2009 the Warden denied his application. Plaintiff appealed to the Regional Director on August 14, 2009. On September 10, 2009

Regional Director denied his appeal. Plaintiff has not further pursued his appeal since then. (Id. ¶ 8(k)).

Fourth Otisville claim (personal Kiddush items in his cell): On September 2, 2009, after the filing of this lawsuit, plaintiff filed a BP-9 asking that he be permitted to perform his Kiddush services in his cell rather than in the chapel with other inmates. The Warden denied this request on September 9, 2009. On September 25, 2009 plaintiff appealed to the Regional Director, who denied the appeal on October 23, 2009. On November 10, 2009 plaintiff appealed to the General Counsel. On March 3, 2010 the General Counsel denied that appeal. (Id. ¶ 8(l)).

Conjugal-visit claim: Plaintiff filed a BP-9 with the Otisville Warden on July 31, 2009 in which he complained that he had been denied conjugal visits with his wife, a prohibition that he contended violated his right to practice his religion. On August 3, 2009 the Warden denied the application, which had been filed after plaintiff had filed his original lawsuit and only three days before the amendment to his complaint. On September 2, 2009 the plaintiff appealed to the Regional Director, who rejected the appeal without prejudice for reasons of form. Plaintiff refiled the appeal on September 25, 2009. Although the Regional Director

31

accepted this appeal, he denied it on October 23, 2009. On November 10, 2009 plaintiff filed an appeal with the General Counsel, who denied the appeal on February 26, 2010. (<u>Id.</u> ¶ 8(m)).

Insofar as plaintiff failed to complete the procedures mandated by BOP regulations for exhausting his administrative remedies with respect to the second Devens Claim, the second, fourth, fifth, seventh and eighth Loretto claims, and the third Otisville claim, those claims are barred from review by a federal court.[5] In this regard plaintiff does not seek to demonstrate the applicability of any of the exceptions that the Second Circuit has recognized as potentially applicable to defeat a failure-to-exhaust defense. (Pl.'s Opp'n, 6-7). Plaintiff does not demonstrate that he has been prevented from pursuing his grievances in a complete and timely fashion; indeed, the record reflects the opposite, including repeated instances in which the grievance authorities offered explanations as to how he might overcome the timeliness bar to review of his grievances. Moreover, he cannot possibly demonstrate that he misunderstood the procedures because of any ambiguity in

---

[5] It also appears that, by expunging a disciplinary conviction from Edelkind's record on his appeal to the Regional Director, the BOP addressed to plaintiff's apparent satisfaction his second Devens claim. Hence he did not pursue an appeal to the General Counsel. If so, this claim appears to be moot as well as unexhausted.

the regulations; indeed, the applicable rules were clearly stated, and plaintiff himself was a very experienced grievant in the federal correctional system. (See Davidson Decl. ¶ 6 (noting that since plaintiff's receipt in the federal prison system in 2005, there were 169 entries in the SENTRY database in connection with plaintiff's administrative-remedy requests)). Finally, plaintiff has not shown that defendants waived their exhaustion defense or should be estopped from asserting it.

In an effort to avoid an exhaustion bar, plaintiff principally argues that exhaustion would have been futile. (Pl.'s Opp'n, 7).[6] Apart from the absence of any evidence that would support this assertion, it is legally untenable. When administrative exhaustion is mandated by statute, as here, the plaintiff must fully exhaust his remedies and may not excuse non-compliance based on an assertion of futility. See, e.g., Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001); Zhong v. U.S. Dep't of Justice, 461 F.3d 101, 114 n. 16 (2d Cir. 2006); Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004).

---

[6] Plaintiff also asserts at one point in entirely conclusory fashion that he has exhausted his prison remedies (Pl.'s Opp'n at 6), but he offers no evidence of this, nor does he specifically contradict the documented representations in the Davidson declaration as to the particulars of his grievance history.

As for plaintiff's remaining claims -- the third Loretto claim, the fourth Otisville claim and the conjugal-visit claim -- he failed to exhaust them before asserting them in this court. Plaintiff filed his original complaint in this case before he had exhausted his administrative remedies with respect to the third Loretto and fourth Otisville claims. That sequence reflects a failure by plaintiff to comply with the statutory requirement that a plaintiff exhaust his prison remedies as to all claims before filing suit on those claims. That failing mandates dismissal of those claims in this case, although it does not preclude plaintiff from filing a new lawsuit incorporating those claims as long as they have been administratively exhausted before the new suit is commenced and are not otherwise barred. See, e.g., Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001); Moor v. Fischer, 2011 WL 2988527, *4-*5 (S.D.N.Y. July 22, 2011); Colliton v. Gonzalez, 2011 WL 1118621, *9 (S.D.N.Y. Mar. 23, 2011) (citing Burgos v. Craig, 307 Fed. App'x 469, 470 (2d Cir. 2008)); Curry v. Mazzuca, 2004 WL 2368013, *3-4 (S.D.N.Y. Oct. 22, 2004).

Similarly, plaintiff failed to complete the exhaustion of his conjugal-visit claim before he added it to the case by way of his August 6, 2009 amendment of his original complaint. This sequence also establishes his failure to comply with the statutory

34

exhaustion requirement and compels dismissal of the conjugal-visit claim at this stage.


D. Official-Capacity Damages Claims


Although the complaint does not make clear whether plaintiff is suing the many defendants in their official as well as their individual capacities, plaintiff's opposition papers appear to indicate that he is seeking relief against them in both capacities. (Pl.'s Opp'n at 5-6). To the extent that he may be seeking damages from them in this manner, his claims are barred by sovereign immunity.


A suit against a government employee in his official capacity is deemed to be a suit against his employer, that is, in this case the United States. See, e.g., Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994); Saleh v. Holder, 2010 WL 5376210, *7 (S.D.N.Y. Dec. 29, 2010). Suits for damages against the Government are barred by sovereign immunity unless Congress has explicitly waived such immunity in specific legislative terms. E.g., Lane v. Pena, 518 U.S. 187, 192 (1996); FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 445 U.S. 535, 538 (1980); Cuello v. Lindsay, 2011 WL 1134711, *5-*6 (E.D.N.Y. Mar.

25, 2011). In this case plaintiff does not suggest any legal basis for finding such a waiver, and we are aware of none. E.g., Robinson, 21 F.3d at 510 (dismissing Bivens claims against federal officials as barred by sovereign immunity); Cuello, 2011 1134711, *5-*6 (same). Accordingly, insofar as plaintiff seeks damages from the defendants in their official capacity, his claims must be dismissed.


E. The Remaining Discernible Claim


Since plaintiff has failed to exhaust his remedies with respect to all but the first Devens claim, and since his claims against the sole Devens defendant -- Warden Sabol -- in her individual capacity are dismissible for lack of personal jurisdiction, the only remaining potential claim is one against the Warden in her official capacity for relief from what plaintiff contends, in substance, is a violation of his right to due process in connection with a disciplinary hearing that took place at the Devens facility. In substance plaintiff may be heard to request, as indicated in his pleading, that he wants his disciplinary conviction expunged. This claim fails as a matter of law -- if for no other reason -- because plaintiff's allegations demonstrate that he cannot establish that a cognizable liberty interest was

infringed.

Plaintiff complains that, facing a charge of improperly attempting to engage in a three-way telephone call, he was prevented -- presumably by the hearing officer -- from calling a witness and offering into evidence a tape of the call. He alleges that, upon being convicted of this violation, he received a two-week sentence in SHU and loss of telephone privileges for six months. (Compl. Ground One ¶ 3).

We assess this claim under Rule 12(b)(6) standards. On a motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); accord, e.g., Triestman, 470 F.3d at 476 (2d Cir. 2006) (internal citation omitted). In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. E.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996). The pleader may not rely, however, on allegations that are only bare

legal conclusions, see Starr v. Sony BMG Music Entm't, 592 F.3d 314, 317 n.1 (2d Cir. 2010) (discussing Rule 8(a)) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)), or "legal conclusions couched as factual allegations." Starr, 592 F.3d at 321 (quoting Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007)).

The traditional test on a Rule 12(b)(6) motion required that the complaint not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Leibowitz v. Cornell Univ., 445 F.3d 586, 590 (2d Cir. 2006) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Supreme Court has since rejected this formulation, however, and a complaint is now subject to dismissal unless its well-pled factual allegations, if credited, make the claim "plausible." See Iqbal, 129 S. Ct. at 1949; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 560-61 (2007). While the Supreme Court's recent decisions do not require a party to plead "detailed factual allegations" to survive a motion to dismiss, they do require that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Starr, 592 F.3d at 321 (quoting Iqbal, 129 S. Ct. at 1949). In any event, "an unadorned, the-defendant-

38

unlawfully-harmed-me accusation" will not suffice. Iqbal, 129 S.
Ct. at 1949. In short, the pleading must do more than "tender[]
naked assertions devoid of further factual enhancement," id.
(internal quotation marks omitted), and in doing so must "'raise a
right to relief above the speculative level.'" ATSI Commc'ns, Inc.
v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting
Twombly, 550 U.S. at 555).


     When addressing a 12(b)(6) motion, the court may not consider
evidence proffered by the moving party or its opponent. E.g., Roth
v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Healthcare Fin.
Group, Inc. v. Bank Leumi USA, 669 F. Supp. 2d 344, 347 (S.D.N.Y.
2009) (internal citation omitted). Rather, the court is limited to
reviewing the four corners of the complaint, any documents attached
to that pleading or incorporated in it by reference, any documents
that are "integral" to the plaintiff's allegations even if not
explicitly incorporated by reference, and facts of which the court
may take judicial notice. See, e.g., ATSI Commc'ns, Inc., 493 F.3d
at 98; Roth, 489 F.3d at 509; Leonard F. v. Israel Disc. Bank, 199
F.3d 99, 107 (2d Cir. 1999).


     In view of plaintiff's status as an untutored pro se litigant,
we read his complaint and motion papers liberally and derive from

them the most reasonable claims and arguments that they may be read to imply. See, e.g., Triestman, 470 F.3d at 474-76. Moreover, the liberal pleading rules apply "with particularly stringency to [pro se] complaints of civil rights violations." Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003). However, the "plausibility" standard articulated in Twombly and Iqbal applies to the pleadings of pro se plaintiffs as well as to those of represented litigants. See, e.g., Carvel v. Cuomo, 357 Fed. App'x 382, 383-84 (2d Cir. Dec. 21, 2009); Sheehy v. Brown, 335 Fed. App'x 102, 104 (2d Cir. June 23, 2009); Collins v. West Hartford Police Dep't, 324 Fed. App'x 137, 138 (2d Cir. May 12, 2009); Dorsey v. Fisher, 2009 WL 4985421, *2, *4 (N.D.N.Y. Dec. 15, 2009); Conseillant v. Lafontant, 2009 WL 2163263, *1 (N.D.N.Y. July 20, 2009).

The pertinent legal criteria are framed by plaintiff's implicit theory that the conduct of the challenged disciplinary hearing violated his due-process rights. To establish this claim, plaintiff must show: '"(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process.'" Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (quoting Giano v. Selsky, 37 F. Supp.2d 162, 167 (N.D.N.Y. Feb. 16, 1999)); Joseph v. Fischer, 2009 WL 3321011, *11

40

(S.D.N.Y. Oct. 8, 2009).

Before a prisoner can show that his due-process rights were infringed, he must first establish that he possessed a liberty interest. Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996); Joseph, 2009 WL 3321011, at *11. A prisoner's liberty interest is implicated by SHU confinement only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Following Sandin and Palmer, a court must look to the actual punishment in making its determination. Id. at 64 (citing Scott v. Albury, 156 F.3d 283, 287 (2d Cir. 1998)). Factors to aid in determining whether the plaintiff endured an "atypical and significant hardship" include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" and "the duration of the disciplinary segregation imposed compared to discretionary confinement." Palmer, 364 F.3d at 64 (quoting Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998)).

There exists no bright-line rule establishing a length of SHU confinement beyond which a due process right is implicated. Palmer, 364 F.3d at 64. Prior cases have, however, recognized guidelines to

41

aid in determining whether a prisoner's liberty interest was
infringed. Id.


     The "development of a detailed record" comparing the
conditions of the confinement in relation to ordinary prison
conditions has been found necessary when a plaintiff was confined
for an intermediate duration, between 101 and 305 days. Palmer, 364
F.3d at 64-65 (quoting Colon v Howard, 215 F.3d 227, 232 (2d Cir.
2000)). Even when the conditions of confinement are normal SHU
conditions, it is possible that a longer-than-intermediate
confinement may be a significant enough departure from "the
ordinary incidents of prison life to require procedural due process
protections under Sandin." Palmer, 364 F.3d at 65 (quoting Colon,
215 F.3d at 231 (finding 305 days of SHU confinement, under normal
SHU conditions, infringed plaintiff's liberty interest)). If the
confinement was less than 100 days, however, the courts have
consistently found that, absent allegation and proof of unique
conditions not normally encountered in SHU, such punishment does
not trigger due-process scrutiny. E.g., Palmer 364 F.3d at 65-66
(confinements shorter than 101 days normally do not implicate a
prisoner's liberty interest; "the duration of confinement, 77 days,
was not long enough to constitute an atypical and significant
deprivation by itself" without unusual conditions of confinement);

Holmes v. Grant, 2005 WL 2839123, *5 (S.D.N.Y. Oct. 25, 2005);
Tookes v. Artuz, 2002 WL 1484391, *3 (S.D.N.Y. July 11, 2002).


In the present matter, plaintiff refers to having been
confined for only fourteen days. Moreover, he has not alleged that
the conditions of his confinement differed from normal SHU
circumstances. Under these circumstances, his sojourn in SHU does
not implicate a liberty interest. See, e.g., Brown v. Secore, 2010
WL 980233, *6 (N.D.N.Y. Mar. 15, 2010) (dismissing claim for
confinement in SHU for 30 days because "federal district courts in
New York . . . have been consistent in holding that terms of SHU .
. . of approximately 30 days, and the related loss of privileges,
do not implicate a liberty interest . . . even in the absence of
detailed factual development") (citing cases); Smith v. Fischer,
2010 WL 145292, *12 (N.D.N.Y. Jan. 11, 2010) (dismissing claim for
24-day confinement);  Smart v. Goord, 441 F. Supp.2d 631, 639-40
(S.D.N.Y. 2006).


Similarly, plaintiff's loss of telephone privileges is plainly
a common incident of prison life and hence does not itself reflect
a circumstance that implicates the loss of a liberty interest. See,
e.g., Johnson v. Enu, 2011 WL 3439179, *12 (N.D.N.Y. July 13,
2011); Webster v. Fischer, 694 F. Supp.2d 163, 189 (N.D.N.Y. 2010);

43

<u>Smart</u>, 441 F. Supp.2d at 639; <u>accord</u> <u>Husbands v. McClellan</u>, 990 F. Supp. 214, 217 (W.D.N.Y. 1998) (loss of privileges, including telephone, for six months during SHU confinement cannot "reasonably be viewed as imposing an atypical and significant hardship on an inmate").

II. <u>Plaintiff's Summary Judgment Request</u>

As noted, by letter dated January 25, 2010 plaintiff sought summary judgment. He offers no evidence in support of this request, and appears in substance to rely on his contention that it was improper for defendants, in their answer to his pleading, to deny knowledge or information as to some of his allegations. On this basis, he asks that the answer be stricken, and -- we infer -- assumes that the striking of the answer would justify entry of summary judgment in his favor. (Pl.'s Opp'n, 5-6).

The short answer is that the form of pleading about which he complains is perfectly permissible, <u>see</u> Fed. R. Civ. P. 8(b)(5), and even if it were not, summary judgment would not be available at this stage in the absence of proof that the evidence entitles him to judgment. In any event, for the reasons noted, plaintiff's claims are fatally flawed and hence the complaint should be

44

dismissed.

## CONCLUSION

For the reasons stated, we recommend that defendants' motion to dismiss or for summary judgment be granted, and that the complaint be dismissed. We also recommend that plaintiff's request for summary judgment be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Sidney H. Stein, Room 1010, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

DATED: New York, New York
      August 31, 2011



                           RESPECTFULLY SUBMITTED,


                           MICHAEL H. DOLINGER
                           UNITED STATES MAGISTRATE JUDGE



Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. Jamie Edelkind
#11866-035
LSCI-Allenwood
P.O. Box 1000
White Deer, Pennsylvania 17887[7]

Natasha Oeltjen, Esq.
Assistant United States Attorney
 for the Southern District of New York
86 Chambers Street
New York, New York 10007

---

      [7] We are mailing a copy of this report and recommendation to plaintiff at his last prison facility because, despite his release some weeks ago, he has failed to update his mailing address with the court.